WOODMAN v. WOODMAN.

*Married Women—Construction of Chapter 2,342, Laws 1860.*

Personal property, which came to a married woman by will of her father after the act of 1860, upon her dying intestate before her husband, did not vest in the husband according to the provisions of section 7 of the act of 1846 in relation to married women, but remained her separate property by force of the act of 1860, to be administered and distributed like other property held by her to her separate use.

APPEAL, by Annie M. Woodman against Sarah A. Woodman, from the decree of the judge of probate appointing Sarah A. Woodman administratrix *de bonis non* of the estate of Abigail Woodman. In order to settle the questions of law involved in this case, the parties agree to the following facts, with the condition that they are not estopped by such agreement if they, or either of them, shall desire hereafter to take testimony, and settle the facts by such testimony or other evidence, in such manner as they might have done had such agreement never been made.

Mary Abbe Woodman, eleven years of age, is the daughter and only child of Charles F. Woodman, who died in March, 1861. Charles F. Woodman and John S. Woodman were the sons and only children of Nathan Woodman. The wife of Nathan Woodman and the mother of

Charles F. and John S. Woodman, was Abigail Chesley, a daughter of Samuel Chesley, of Durham.   Samuel Chesley died after August, 1860, and before the death of his daughter Abigail, who died in January, 1864.    Samuel Chesley, before 1860, gave his daughter Abigail, wife of Nathan Woodman, a certain amount of personal property ; and by his will he gave her personal property, consisting chiefly of stocks, to the amount of $3,000 or $4,000.   On the death of Abigail Woodman her husband took administration of her estate, and died in March, 1869, without completing the administration.   By his will, Nathan Woodman made John S. Woodman residuary legatee of his estate.   John S. Woodman died in April, 1871.   Said John S. Woodman was the only surviving child of said Abigail Woodman, and said Mary Abbe Woodman was her only surviving grandchild.   It is agreed that the personal property given to said Abigail by said Samuel Chesley came into the hands of said Nathan Woodman, and that, claiming it as his own, he filed no inventory thereof, and that, at his decease, it passed into the hands of said John S. Woodman, administrator and residuary legatee of said Nathan, and that said John S. duly filed a bond as residuary legatee, and never filed any inventory of said estate, but received, claimed, and treated the property bequeathed to said Abigail by said Chesley as part and parcel of the estate of said Nathan, and received the same and claimed the same as part and parcel of the estate bequeathed to him as residuary legatee of said Nathan ; that, upon the decease of said John S., the property, both given and bequeathed by said Chesley to said Abigail as aforesaid, came into the hands and possession of said Annie M. as the executrix and residuary legatee of said John S., and that she now claims to hold the same as being part and parcel of the estate of said John S., and as belonging to her under his will ; that a portion of the identical stocks bequeathed to said Abigail are now held by her, said Annie M., and a portion had been changed into other stocks, some by said John S. and some by said Nathan ; that said Sarah A. is the mother and duly appointed guardian of said Mary Abbe, and, as said guardian and next friend of said Mary Abbe, she petitioned to the judge of probate for the county of Strafford, in July, 1872, to be appointed administratrix *de bonis non* of the estate of said Abigail Woodman, and was so appointed, and gave bond according to law ; that in said petition she sets forth the substance of all the facts herein stated, together with the fact that said Nathan Woodman never completed the administration of the estate of said Abigail, and claims that said Mary Abbe is next of kin to said Abigail, and, as her heir, is entitled to one half of the estate, both given and bequeathed by said Chesley to said Abigail, and which, as aforesaid, passed into the hands of said John S. and Annie M., with increase, dividends, and interest.   Said appellant contends that upon the facts stated said Mary Abbe is not in law entitled to any of the estate devised, given, or bequeathed by said Chesley to said Abigail, and that upon the facts stated there is no estate of the said Abigail on which to administer, but that said Nathan, by taking out letters of administration, reduced all the estate

of said Abigail to his own possession, and that thereby it became the individual property of said Nathan.

*Ira Perley*, for the appellee.

The general question is, whether the personal property given by Samuel Chesley to his daughter, Mrs. Woodman, on her death intestate, went to her next of kin, or became a part of her husband's estate and was legally administered as such.

Mrs. Abigail Woodman took the personal property in question under the will of her father by virtue of the act of 1860. By that act any married women held " to her own use, free from the interference or control of her husband, all property inherited by, bequeathed, given, or conveyed to her." Taking this provision by itself, without any limitation of the language used, it gives the general unqualified property to the wife. This would be the effect of the provision if the act said nothing more. But the act makes an express reservation of the husband's right of courtesy; and this would seem to place it beyond doubt that the intention was to give the estate of the wife every quality and every incident of absolute property in her, except in the case expressly reserved, including claims to the property after her decease,—for the claim to courtesy would come after her death ; and this exception in favor of the husband would not be made if he was to have any other interest in the estate of his wife who died intestate. Why should the right of the husband to courtesy be expressly reserved to him, if it were not intended that every other right to her estate, in her life-time or after her death, was to be taken from him ? The intention of the act, construed by itself, is plain, that the property held under the act should have all the qualities and incidents of an absolute title, except so far as it is qualified by the act itself, and, among other incidents of an absolute title, should go, on her dying intestate, to her next of kin, under the general statute which disposes of the estate of a deceased owner intestate. Indeed, I understand it to be conceded that the personal property in question went, on the death of Abigail Woodman, to her next of kin, unless the distribution was controlled by the provision in the 7th section of the act of 1846.

In order that the provision in the act of 1846 should govern the distribution of the personal estate held by a married woman under the act of 1860, the provision must have been in force at the death of the married woman, and must have been applicable to an estate held under the act of 1860. The provision was not applicable to an estate held under the act of 1860, but relates only to estates held under the act of 1846. If it relates to estates held under the act of 1860, it must be because it was intended as a general rule governing the distribution of all estates held by married women to their separate use.

In the first place, the terms of the provision do not include any estates except those held under the act of 1846 ; but, on the contrary, the terms of the provision exclude all cases but those arising under

the act itself. " If any married woman, holding property to her sep-
arate use by virtue of this act, shall die intestate, all her right and
title to the property thus held shall vest in her husband." Here is
the description of the property which, under the act, is to go to the
husband on the death of the wife intestate. It is a part of the statu-
tory description of the property, which is to go to the husband on the
death of the wife, that it is held by virtue of this act; and on inquiring
whether any property is within that provision, no part of this descrip-
tion can be rejected, and property not held by virtue of the act of 1846
is excluded by the terms of the provision itself. It would be an un-
precedented stretch of construction to hold that the provision extended
to cases not included by the terms of the act, but excluded by them.
If we examine our previous legislation in regard to property held by
married women to their separate use, we shall find strong additional
grounds for concluding that the intention of this provision was such
as is plainly expressed, to wit, that it should be limited in application
to property " held by virtue of that act."

By the Revised Statutes, married women held property to their sole
and separate use, where they had been ill-treated and deserted by their
husbands. In the 7th sec. of ch. 149 there is a provision, general in
terms, that "whenever any married woman shall be entitled to hold
property in her own right and to her own separate use, such estate
shall be administered and inherited in the same manner as if she were
sole and unmarried." It is said by EASTMAN, J., in *Wakefield* v. *Phelps*,
37 N. H. 301, 302, that this provision, though general in terms, applied
only to the class of cases mentioned in that chapter, in which a mar-
ried woman held property to her separate use on account of some mis-
conduct or neglect of the husband, and that this provision operated as
a penalty on the husband. If the provision in the 7th section of the
act of 1846 was intended as a general rule, applicable to all cases
where married women held property to their separate use, and not
limited, as is stated in the provision itself, to property held to the sole
and separate use of the wife by virtue of that statute, then a married
woman, who had earned money and acquired property after she had
been deserted by her husband, and held it to her sole and separate use
under the statute, would leave it, if she died intestate, to the guilty
husband and not to her children. It is quite impossible to suppose
that such was intended to be the effect of the statute of 1846.

Again : after the act of 1846 had been twelve years in operation, the
7th section of chapter 149, Revised Statutes, is treated by EASTMAN, J.,
delivering the opinion of the court in *Wakefield* v. *Phelps*, as then in
force, and constituting part of the existing law bearing on the question
under consideration. After citing the statute, he says, " The clause
operates as a penalty upon the husband who shall desert his wife, and
shows that it is to such persons that the section applies, and not to
husbands in general"—p. 301. It would seem to be too clear for doubt, on
general reasons and on the authority of *Wakefield* v. *Phelps*, that the
7th section of chapter 149, Revised Statutes, continued to be in force,

and governed the class of cases embraced in it, after the act of 1846 was passed; and it follows, that the provision in the 7th section of the act of 1846 was not intended to be of general application to all cases where married women held property to their separate use; and that this provision applied only, as is expressly limited in the act itself, to property held by married women to their separate use by virtue of that act, and did not apply to other existing cases. The notion that a provision, limited in terms to cases arising under the act in which it was inserted, and not applying to other existing cases, could have been intended to lay down and establish a general prospective rule to control the construction of all future legislation, and to be implied in all laws afterwards enacted relating to estates held by married women to their separate use, though not mentioned in such laws, is too extravagant for serious consideration. If the law of 1860 is affected by this provision of the 7th section of the act of 1846, it is because that provision was reënacted by the statute of 1860 itself; and if the provision in the 7th section of the act of 1846 is not reënacted, expressly or by implication, in the act of 1860, that provision does not apply to an estate held under the act of 1860. There is nothing in the statute of 1860 that shows an intention to enact or adopt the provisions of the 7th section of the act of 1846 as applicable to estates held under the new statute. This is a general statute, entitled "An act in relation to married women." There is no reference in its title, or any of its provisions, to the act of 1846. It is not an act in addition to the act of 1846, or in amendment of it; nor is there anything in the scope and general design of the act to show an intention to enact or adopt any provision of the act of 1846. The act of 1860 was intended to contain, and does in fact contain, every provision necessary to carry it into effect without resorting to anything in the act of 1846; and it reënacts all the provisions of the act of 1846 which it was intended should apply to the new statute,—such as the provision for suits for and against the married woman, for courtesy of the husband, etc. These provisions in the act of 1846 being reënacted, the inference is irresistible that the intention was to include expressly in the act of 1860 all the provisions of the act of 1846, which it was intended should apply to the new statute. The connection in which this provision of the 7th section and the reservation of courtesy stood in the act of 1846, and the reënactment of one and the omission of the other, are very significant to show that the omitted provision was not intended to apply to the new act. The clause of the 7th section, which contains this provision, is as follows: "If any married woman, holding property by virtue of the provisions of this act, shall die intestate, all her right in the property thus held shall vest in her husband, unless other provision in relation thereto is made by the terms of the contracts or conveyances herein before mentioned; and he shall be entitled to his estate by courtesy in all lands and tenements held by his wife, as if this act had not been passed." Here, in the same section and in immediate connection, the statute of 1846 describes the rights and interests which the husband shall have in

property held by his wife to her sole and separate use after her death. Now the statute of 1860 does enact and adopt the provision which secures the husband his estate by courtesy, and does not enact or adopt the provision which gives him the personal estate of his wife who has died intestate. The conclusion is not to be avoided, that, in the statute which did enact and adopt one of these provisions and wholly omitted all mention of the other, there was no intention to enact or adopt the omitted provision. It is also very material that the act of 1860 says nothing of administration by the husband of the wife's estate. If the husband under the act of 1860 was entitled to the wife's estate held to her separate use at common law, and under the statute of 1846, why under the act of 1860 is not that right reserved to him ? If her estate held to her separate use went to her next of kin, and her husband had no interest in it, there was no reason why he should administer ; and her next of kin would administer under the general law, as if she were a *feme sole*. And this provision for administration by the husband was evidently omitted, because under the act of 1860 the husband had no interest in the personal estate held by the wife to her sole use, when she died intestate.

By a well-settled rule of construction, where in a later statute there is a revision of the subject-matter of a prior statute, and the later statute covers the whole ground of the prior statute, the earlier statute is repealed by the later ; and a provision of the prior statute omitted in the later is intended to be repealed. This rule is applicable to the present case.

Besides, the act of 1860 expressly provides that all acts and parts of acts inconsistent with the act are thereby repealed. Here is an emphatic declaration by the statute, that all prior laws inconsistent with it are thereby repealed, and the provision of the act of 1846, giving the property after the wife's death to the husband, is clearly inconsistent with the provisions of the act of 1860.

The act of 1846 related only to cases where there was an intention that a married woman should hold property to her sole use, expressed in an ante-nuptial contract, or in the gift or conveyance under which she took it ; and that act merely enabled her to hold the property to her sole use, according to the express intention, " without the intervention of a trustee." The act of 1860 included such cases, but extended to others where there was no expressed intention that the property should be so held. If the act of 1846 had never been passed, the act of 1860 would have covered every case provided for by the act of 1846. An expressed intention that a married woman should hold property to her sole and separate use, certainly would not prevent her from so holding it under the general provisions of the act of 1860. As, therefore, the act of 1860 covered the whole ground of the act of 1846, there was no occasion to embarrass the law by keeping two statutes on foot relating to exactly the same subject-matter. The legislature therefore passed the act of 1860, not in amendment of the act of 1846, but a general statute covering the ground of the statute of 1846, and reënacting such

parts of the former statute as were intended to remain in force. The intention is quite clear to revise the whole matter of the statute of 1846, adopting such parts of it as were intended to be continued in force; and, by omitting the provision which gave the husband the estate of his wife if she died intestate, that provision was repealed. This case falls under the rule stated by Bell, C. J., in *State* v. *Wilson*, 43 N. H. 419, that " where some parts of a revised statute are omitted in the revision, they are not to be revived by construction, but are to be considered as annulled."

Then, again, the act of 1865 is decisive to show that, in the understanding of the legislature, this provision of the seventh section of the act of 1846, after the act of 1860, was not in force, and applicable to cases arising under that act.

The act of 1865, ch. 4080, is entitled "An act in addition to an act entitled an act in relation to married women, passed July 4, 1860." It was not an explanatory act, undertaking to give a legislative construction to the act of 1860. It was in addition to that act, and made three important changes in the law as it stood under the act of 1860. It extended the provisions of that act to cases where married women acquired property before marriage; and it gave to the husband two rights in the property of his wife which he had not under the act of 1860,—the right to her personal estate, held to her separate use, if she died intestate; and, if she made a will, the same right that she would have had in his property. It gave him the right to her personal property held to her separate use, in case of intestacy, by providing in section three that " if any married woman, holding property to her sole and separate use, in accordance with this act or the act of which this is an addition, shall die intestate, said property shall vest and be administered as is provided in sec. 7 of ch. 327 of the laws of 1846." This act of 1865, enacting the provision of the seventh section of the act of 1846, was not passed until after Mrs. Woodman's death, in January, 1864, and the provision of the seventh section of the act of 1846 was not in force under the act of 1865, and applicable to the property held by Mrs. Woodman under the act of 1860, when she died in 1864. Why should not this be regarded as decisive of this case?

The law remained as it stood under the act of 1865 about two years, when it was again changed by the General Statutes, ch. 164, sec. 4, under which the husband takes the same share in his deceased wife's estate that she would in his, whether she died testate or intestate.

Since the statutes began to intermeddle with the law relating to the property of married women, the legislation of the state has been so fluctuating and apparently experimental that no guide to the construction of a statute can be found in any settled legislative policy on the subject. The general tendency, however, has been to give the wife's interest in her estate more and more the character and all the incidents of an absolute property.

Mary Abbe Woodman, the infant granddaughter of Mrs. Abigail Woodman, has been guilty of no laches, and if she is entitled to a

share in her grandmother's property, her right cannot be prejudiced by a wrongful attempt to include the property in the estate of Nathan Woodman. The estate of Abigail Woodman has never been administered, no inventory has been returned, nor has there been any decree to distribute it. And so in respect to the administration upon the estate of Nathan Woodman and John S. Woodman. Nothing done there can affect the rights of Mary Abbe Woodman. And the question now is, whether, upon the administration of the estate of Abigail Woodman, Mary Abbe Woodman is entitled to a share.

*Ira A. Eastman*, for the appellant.

The question presented by this case is this: To whom does the property, both that which was given and that which was bequeathed by Samuel Chesley to his daughter, Abigail Woodman, belong? The appellant claims that, upon the facts stated, it all belongs to her; while the appellee maintains that one half goes to her daughter, Mary Abbe Woodman, and the other half to the appellant.

On behalf of the appellant, we submit,—I. That at common law, the property being all personal, both that which was given by Mr. Chesley to his daughter in his lifetime, as also that which he bequeathed to her by his will, would all pass to Nathan Woodman, her husband, by being reduced to his possession, subject, of course, to her debts. This might be done during the lifetime of the wife, or after her death, by his taking administration on her estate. *Atherton* v. *McQuestion*, 46 N. H. 205, and authorities there cited. Numerous other authorities might also be cited were it deemed necessary.

Independent, then, of statutory regulations, it would seem plain that the property in question would all pass to Nathan Woodman, and from him to his son, John S. Woodman, and from him to his wife, the apellant.

II. But the statute of 1860 is relied upon as annulling entirely this rule of the common law; and a very elaborate and ingenious argument has been furnished by the learned and able counsel for the appellee to sustain this position.

So far as the property given by Mr. Chesley to his daughter is to be regarded—the gift being made prior to the statute of 1860—we suppose that no serious question can exist; and that to that extent the ward of the appellee has no claim, the rule of the common law being applicable. The counsel makes no allusion to any distinction between the property given before the enactment of the statute and the property bequeathed by the will, which did not take effect till 1864; but he commences his argument by saying that " Abigail Woodman took the personal property in question under the will of her father, by virtue of the act of 1860." We therefore assume that he yields all right to that part of the property which was given to Mrs. Woodman before her father's death and before the act of 1860, and claims only that which was bequeathed by the will.

In considering the effect of this statute of 1860 upon this property, we would first call the attention of the court to the act of 1846. That statute enacted that "any devise, conveyance, or bequest of property, real, personal, or mixed, may be made to any married woman, to be held by her without the intervention of a trustee, to her sole and separate use, free from the interference or control of her husband," and that she should hold the same accordingly.

The seventh section of that act is as follows: "If any married woman, holding property to her separate use by virtue of this act, shall die intestate, all her right and interest in the personal property thus held shall vest in her husband, unless other provision is made in relation thereto by the terms of the contracts or conveyances hereinbefore mentioned; and he shall be entitled to his estate by the courtesy, in all lands and tenements held by his wife, as if this act had not been passed; provided, however, that in any such case it shall be necessary for the husband to take administration on the estate of the deceased wife; and he shall hold such personal property, and all the interest of the wife in any real estate, saving his estate by the courtesy, subject to the payment of all debts incurred by her either before or after the marriage."

By this statute it would seem that the wife would have the absolute title to all the property held by her in the manner therein specified, except that she could not deprive her husband of his rights as tenant by the courtesy. She could dispose of it as she might please during her life, or could will it to whomsoever she might choose, to be taken by her legatees upon her death, subject to her debts and her husband's rights by the courtesy. If she died intestate, all her personal property thus held vested in her husband, provided he took administration on her estate, unless there was some other provision in relation thereto in the contracts or conveyances by which it was held.

But, in order that she should so hold the property, it was necessary that the "devise, conveyance, or bequest" by which it was held, should so express it. If it was so expressed, then she had the same power over the property and the same rights in it that she would have in property held under the act of 1860. The phraseology of both acts is nearly identical. In that of 1846 she is to hold the property "to her sole and separate use, free from the interference or control of her husband;" and in that of 1860, she is to hold "to her own use, free from the interference or control of her husband."

What, then, was the object of the act of 1860? Evidently this,—to remove all necessity of having the devise, conveyance, or bequest express the manner in which the property should be held, and to provide that whenever property was given by will or otherwise to a married woman, or conveyed to or inherited by her, she should hold it to her sole and separate use, whether it was so expressed in the title by which she held it or not. And to that extent and that only does the act of 1860 go.

Now, it is argued that the act of 1846 and all its provisions were

repealed by the act of 1860. And, first, because the same provision, that the husband shall not be deprived of his right by the courtesy, is to be found in both acts, while the other provisions of the act of 1846 are not alluded to in the act of 1860. But we fail to view it in this light. To us it appears that this exception shows nothing more than this,—that the wife should not have the power to bequeath or devise the property so as to cut off the right of courtesy, which power it might be claimed would exist were it not specially contained in the act. And the crudeness which exists in the legislation upon this subject, and which is so well expressed by the counsel when he says that " since the statutes began to intermeddle with the law relating to the property of married women, the legislation of the state has been so fluctuating, and apparently experimental, that no guide to the construction of a statute can be found in any settled legislative policy upon the subject," forbids the conclusion that so palpable a wrong could have been intended by the legislature by inserting this courtesy clause and omitting others, as that the husband should take no share of the personal property of the wife dying intestate, but that it should all go to the next of kin, even to the remotest collateral.

Again : it is said that the statute of 1860 was a general revision of the subject-matter of the act of 1846, and that the latter was thereby repealed by the enactment of the former. But we submit that a comparison of the two statutes shows plainly that such was not the case. No allusion whatever is made in the act of 1860 to the very important matter of the descent of the personal property in case the wife should die intestate ; and the rule is well established, that the later statute must cover the whole ground. of the former, otherwise the provisions of the former, not expressly repealed, remained in force.

And the same remarks may be made in regard to the repealing clause in the act of 1860, that all acts and parts of acts inconsistent with that act should be repealed. The provisions of the act of 1846 are not inconsistent with the act of 1860. By the former, the wife held the property to her sole and separate use, if it was so expressed in the deed ; by the latter, she would hold it whether so expressed or not. It made no difference with her rights in the property whether she held under the one statute or the other. By the former, she could dispose of the property as she might please during her lifetime, or by will, subject to her debts and her husband's rights of courtesy ; and by the latter, she could do no more. The object of both statutes was to benefit the wife, not to injure the husband ; and her powers under both statutes are the same, and her rights the same. Where, then, is the inconsistency of the former with the latter ? And if the legislature had intended to repeal the act of 1846, or any of its provisions, the common and usual course would have been resorted to, and they would have said, in the repealing clause of the act of 1860, that " the act of 1846, and all acts and parts of acts inconsistent with the provisions of this act, are hereby repealed." Failing to do that, and there being no inconsistency in the object of the two acts, it would be gross

injustice to the husband to hold that the act of 1846 was thus repealed.

But, again: it is said that the act of 1865 is decisive to show that, in the understanding of the legislature, the provision of the seventh section of the act of 1846 was not in force. But is it to be seriously contended that the understanding of the legislature of 1865, or of any other legislative body subsequent to 1860, is to govern the court in their construction of that act, or of the act of 1846? If so, we would suggest that the act of 1865 was probably passed under the apprehension of that body that the extraordinary ground now taken by the appellee might perhaps be resorted to; and to guard against it the act was passed. But it seems that the legislature of 1865 regarded the act of 1846 in force, for it provides that if any married woman, holding property to her sole and separate use, shall die intestate, said property shall vest and be administered as is provided in section 7 of chapter 327 of the laws of 1846. If the act of 1846 was repealed, as contended, by the act of 1860, then the legislature, instead of referring to this section of the act of 1846, would have enacted in specific terms the provisions of the same. But they evidently understood it to be in force.

Again: it is said that this property cannot pass under the provisions of the seventh section of the act of 1846, because the property was not held under the special provisions of that act. But we submit that this is too narrow a construction, and one which the court will not adopt. This property was held in the manner stated in that act, to the sole and separate use of the wife; and being thus held, the court will not inquire whether it was caused by express provision of the will, or by force of the law, by which the necessity of expressing the intention was removed. Moreover, the act of 1846 not being repealed by the act of 1860, it is but legitimate to presume that the legislature intended that all the provisions of the act of 1846 should apply, so far as necessary, to the act of 1860, upon the general principle, that where an act is not specifically repealed by the passage of a new act upon the same subject, all the provisions of the former act remain in force, and are substantially reënacted and made in effect a part of the new act. We do not contend that, when the act of 1846 was passed, the seventh section was intended or could apply to future legislation, but that the legislature, having undertaken in the act of 1860 to establish by general law what before was required to be expressed in the will or deed, and not having repealed the statute giving the rights to the husband in all property held in that way, intended that this section should be in force and govern all such property acquired under the act of 1860, the main object of that act being to remove the necessity of having the intention expressed. We maintain, then, that the positions of the appellee are untenable, and that Nathan Woodman, by taking administration on his wife's estate, complied with the requirement of the seventh section of the statute of 1846; and the personal property given to her by her father thereby vested in him, both by force of the statute and at com-

mon law, and from him it legitimately descended to the appellant. And here we would suggest, as worthy of consideration, another view of the case, which is this,—whether, inasmuch as the statute of 1860 is, in terms, silent upon the question of the descent of the property held by the wife, it does not pass to the husband, under the rule of the common law. We do not desire that the husband shall have any greater protection from the court than the wife, but, in the crude legislation of the present age, it is often difficult to ascertain what those rights are; but we cannot believe that our legislature, in passing the act of 1860, intended to deprive the husband of an intestate wife of all rights in her personal property, and to send it off, as would often happen, to some unknown and unheard-of collateral relative; nor can we convince ourselves that the court will arrive at any such conclusion.

The suggestion in the brief of the learned counsel, that here is a wrongful attempt to include this property in the estate of Nathan Woodman, is not warranted by the facts. All that the appellant asks is what she is justly entitled to by the law of the land; and probably the expectations of this minor of a very large inheritance from her maternal relatives induced her grandfather, Nathan Woodman, to take the course which he did in regard to this property.

Ladd, J. As to the personal property given by Samuel Chesley to his daughter Abigail before 1860, no serious question is made; and there would seem to be no doubt but that by the seventh section of the act of 1846 (Laws of 1846, ch. 327) it vested in her husband, Nathan Woodman, upon his taking administration on her estate, according to *Atherton* v. *McQuestion*, 46 N. H. 205.

The controversy is respecting the property, consisting chiefly of stocks, which Abigail took under her father's will at some time later than August, 1860. On the one hand, it is contended by the appellant that, although this property came to Abigail Woodman after the act of 1860 (Laws of 1860, ch. 2342) took effect, and in such way that, by the terms of that act, she held it to her own use free from the interference and control of her husband, still, upon her dying intestate, its distribution is to be governed by the seventh section of the act of 1846, which gives the whole to the husband provided he takes administration. On the other hand, it is contended for the appellee that the act of 1846, by its express terms, has relation only to property held by a married woman to her separate use *by virtue of that act;* that it cannot fairly be regarded as an attempt by the legislature to lay down a general rule which should operate prospectively and control the distribution of property held by married women to their separate use by virtue of any future acts that might be passed; that the act of 1860 is to be regarded as a revision of the whole subject-matter of the act of 1846; that the intention was to repeal such parts of the earlier act as are not included in the later; that the provision of section 7 of the act of 1846 is inconsistent with the absolute title and ownership conferred upon the wife by section 1 of the act of 1860, and is therefore expressly repealed by

the repealing clause of that act.   The printed arguments of the learned counsel on both sides are elaborate and exhaustive, and little seems to be left for the court but to weigh the various reasons thus urged upon our consideration.

It cannot be contended that property which came to a married woman after the act of 1860, in one of the ways specified in that act, was held by virtue of the act of 1846.   Is it a fair construction of the phrase, "holding property to her separate use *by virtue of this act,*" as used in section 7 of the act of 1846, that the provisions of that section are to be applied only to property the title and ownership of which is placed in the married woman by the force and effect of that particular statute ?  or, would such a construction be too narrow, as argued by the appellant ?  and should it be held to mean all property held *in the manner* there pointed out, whether by force of that particular statute or any other which makes provision for the holding of property by married women to their separate use ?

·We are of opinion that upon this point the weight of reason is quite decidedly in favor of the appellee.

The language used furnishes a strong argument against the view contended for by the appellant.   If the legislature had intended to enact a general rule on the subject, which should be applicable to and govern the distribution in all cases, it is quite incredible that they would have carefully limited its application in the way they did, and for this purpose select the most apt words they could employ, to show that it should have relation only to property, the title to which was created in the married woman by the act itself.   The use of the words, "by virtue of this act," seems to indicate a consciousness on the part of the legislature that the act bore somewhat the character of an experiment, and a purpose carefully to limit the consequences of the experiment to the precise subject-matter upon which it was to take effect.

The legislation on this subject has been characterized by counsel on both sides as fluctuating and apparently experimental, and this seems to furnish a reason why the provisions of one act, which are therein expressly limited in their operation to the act itself, should not be carried forward and ingrafted on another act covering substantially the same ground, when there is nothing in the subsequent act to indicate that such was the legislative intent.

It is unnecessary to repeat the argument of the appellee's counsel upon this point.   We think it is in the main sound, and that the reasons then urged do not admit of a satisfactory answer.

It follows that this provision in the act of 1846 was in effect repealed by the act of 1860 ; and it makes no difference whether we say this practical result arises out of the fact that the earlier statute is inconsistent with the later, and so is expressly repealed, or that the later act covers the whole ground of the earlier, and so repeals by implication such parts of the earlier act as are omitted from it.   The point is, that the earlier act provided a mode of distribution expressly

limited to property held by virtue of the act itself, and so by its own terms it can have no application to property held by virtue of the later act, even though the general tenor and scope of the two may be similar. The former became of no effect, and so was practically repealed when the latter took away the subject-matter upon which it was to operate.

The conclusion is, that, so far as regards the property which came to Abigail Woodman by the will of her father, its distribution upon her death is not to be controlled by section 7 of the act of 1846, but goes to her next of kin according to the general law regulating the distribution of the estates of intestates.